1

2

3

4

5

6

7

8

9               IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11   BENJIE D. BROOKINS,

12           Plaintiff,                   No. CIV S-03-0916 GEB JFM P

13       vs.

14   CAL TERHUNE, et al.,

15           Defendants.                  FINDINGS AND RECOMMENDATIONS

16   _____/

17           Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  On December 20, 2004, plaintiff was granted leave to file a second amended

19   complaint as to defendants Thortona, Hill, Goughour and Bishop concerning plaintiff's

20   allegations of wrongful gang validation.  On February 18, 2005, after receiving an extension of

21   time, plaintiff filed an amended complaint raising only wrongful gang validation issues.

22           In his February 18, 2005 amended complaint, plaintiff provided evidence that

23   despite prior findings that there was insufficient evidence to validate plaintiff as either a gang

24   member or an associate of a gang (see Pl.'s Exs. 7, 10), defendants continued to refer to plaintiff

25   as a gang associate (see Pl.'s Exs. 3, 5, 8).

26   /////

1

1    By order filed March 16, 2005, this court found that plaintiff's February 18, 2005

2 amended complaint stated a cognizable claim for relief pursuant to 42 U.S.C. § 1983 and 28

3 U.S.C. § 1915A(b), and directed defendants Thortona, Hill, Goughour and Bishop file an answer.

4 After receiving an extension of time, defendants filed a motion for summary judgment and

5 motion to dismiss on April 26, 2005.  Plaintiff has timely filed an opposition.

6                    STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT

7    Summary judgment is appropriate when it is demonstrated by a party that "there is

8 no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

9 matter of law."  Fed. R. Civ. P. 56(c).  A party may seek summary judgment on all or any part of

10 another party's claims.  Id.  The moving party

11          always bears the initial responsibility of informing the district court
            of the basis for its motion, and identifying those portions of "the
12          pleadings, depositions, answers to interrogatories, and admissions
            on file, together with the affidavits, if any," which it believes
13          demonstrate the absence of a genuine issue of material fact.

14 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

15 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

16 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

17 to interrogatories, and admissions on file.'"  Id.

18    Summary judgment should be entered, after adequate time for discovery and upon

19 motion, against a party who fails to make a showing sufficient to establish the existence of an

20 element essential to that party's case and on which that party will bear the burden of proof at

21 trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

22 nonmoving party's case necessarily renders all other facts immaterial."  Id.  Summary judgment

23 should be granted "so long as whatever is before the district court demonstrates that the standard

24 for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

25    If the moving party meets its initial responsibility, the burden shifts to the

26 opposing party to establish that a genuine issue as to any material fact does exist.  Matsushita

1   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

2   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

3   of his pleadings but is required to tender evidence of specific facts in the form of affidavits

4   and/or admissible discovery material in support of the contention that a dispute exists.  Fed. R.

5   Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The party opposing summary judgment must

6   show that any fact in contention is material, i.e., a fact that might affect the outcome of the suit

7   under the governing law, and that the dispute is genuine, i.e., the evidence is such that a

8   reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc.,

9   477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

10  626, 630 (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

11              In trying to establish the existence of a factual dispute, the party opposing

12  summary judgment need not establish a material issue of fact conclusively in his or her favor.  It

13  is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

14  parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the

15  "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

16  whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.

17  56(e) advisory committee's note on 1963 amendments).

18              The evidence of the party opposing summary judgment is to be believed, and all

19  reasonable inferences that may be drawn from the facts placed before the court must be drawn in

20  favor of the party opposing summary judgment.  Anderson, 477 U.S. at 255; Matsushita, 475

21  U.S. at 587.  Inferences will not be drawn out of the air, however; it is the opposing party's

22  obligation to produce a factual predicate from which an inference may be drawn.  Richards v.

23  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

24  (9th Cir. 1987).  The opposing party "must do more than simply show that there is some

25  metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not

26  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

1  Matsushita, 475 U.S. at 587 (citation omitted).

2        By an order filed in this case on January 9, 2004, plaintiff was advised of the

3  requirements for opposing a summary judgment motion pursuant to Rule 56.  See Rand v.

4  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409,

5  411-12 (9th Cir. 1988).

6  ANALYSIS

7        The Civil Rights Act under which this action was filed provides as follows:

8       Every person who, under color of [state law] . . . subjects, or causes
to be subjected, any citizen of the United States . . . to the

9       deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at

10       law, suit in equity, or other proper proceeding for redress.

11  42 U.S.C. § 1983.  To prevail on a claim under this statute, a plaintiff must allege and prove two

12  essential elements:  (1) that the plaintiff was deprived of a right secured by the constitution or

13  laws of the United States and (2) that the alleged deprivation was committed by a person acting

14  under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

15        Section 1983 requires an actual connection between the actions of the defendants

16  and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of

17  Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects'

18  another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an

19  affirmative act, participates in another's affirmative acts or omits to perform an act which he is

20  legally required to do that causes the deprivation of which complaint is made."  Johnson v.

21  Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisory personnel are generally not liable under

22  § 1983 for the actions of their employees under a theory of respondeat superior and, therefore,

23  when a named defendant holds a supervisorial position, the causal link between him and the

24  claimed constitutional violation must be specifically alleged and proved.  See Fayle v. Stapley,

25  607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

26  /////

4

1    A.  Relevant Facts

2        1.  On October 2, 2000, defendant Bishop wrote a California Department of

3    Corrections 128-B gang status update chrono which states in pertinent part:

4            [T]here is insufficient information to support [plaintiff] is a
             validated member, associate or dropout from any prison gang or
5            disruptive group. . . .  [However], there is documentation which
             would indicate [plaintiff] is associating with members of the Crips
6            disruptive group.  [Plaintiff's] behavior should be closely
             monitored whenever gang activity or association is present.

7

8    (Complaint, Ex. 3.)

9        2.  On October 5, 2000, plaintiff states he was forced to share a cell with inmate

10   Alexander, a documented "Blood" prison gang member, which plaintiff believed threatened

11   plaintiff's safety.  (See Complaint, Ex. 4.)

12       3.  On November 15, 2000, defendant Bishop issued an updated chrono noting

13   there was insufficient information to validate plaintiff as a member or associate of any prison

14   gang or disruptive group.  However, the chrono clarified that plaintiff associated with members

15   of the Crips disruptive.  (Complaint, Ex. 5.)

16       4.  On January 10, 2001, Lt. McJunkin confirmed that plaintiff's central file

17   contained insufficient information to validate plaintiff as a member or associate of a prison gang

18   or disruptive group.  (Complaint, Ex. 7.)

19       5.  On January 16, 2001, plaintiff appeared before a Unit Classification

20   Committee which included defendants Thorntona and Hill.  (Complaint, Ex. 8.)  The report from

21   the meeting states that plaintiff has not been validated as a gang member and that "IGI confirmed

22   following this Committee action that [plaintiff] is not a "Crip" associate."  (Id.)[1]  Although

23   plaintiff also informed the panel he was not a gang affiliate or associate, Thorntona and Hill

24   _____

25       [1]  Plaintiff has provided another copy of the Committee's report, also dated January 16,
     2001, to which a sentence was added "However, has had association with CRIPS."  (Complaint,
26   Ex. 10.)

1 issued a 128-G chrono identifying plaintiff as a Crips associate.  Plaintiff then received a revised

2 chrono which reflected plaintiff was *not validated* as a gang member but that the case was

3 referred to the Institution Gang Investigative Unit for clarity as to whether plaintiff was a gang

4 associate.

5       6.  At the March 20, 2001 classification hearing, plaintiff alleged defendant

6 Thorntona refused to acknowledge his disassociation with the gang and continued to label him as

7 a gang associate.  The report from the March 20, 2001 hearing states "128-B dated 10-2-00 from

8 the IGI notes that there is no gang validation, however, to monitor [plaintiff] closely when gang

9 activity is present.  812 is updated to note that [plaintiff] only has association w/Crip."

10 (Complaint, Ex. 11.)

11       7.  On December 19, 2001, the Institution Classification Committee modified

12 plaintiff's CDC 128-G dated March 20, 2001, by redacting the reference to Crips association.

13 (Complaint, Ex. 1.)  The CDC 128-G chrono dated October 2, 2000, was also modified by

14 redacting any reference to plaintiff's Crips association.  (Id.)

15       8.  Plaintiff alleged defendant Goughnour authored a memorandum wherein he

16 affirmed that any reference to plaintiff's gang affiliations was removed from his file.

17       9.  On June 9, 2004, plaintiff was transferred from CSP-SAC SHU to Corcoran

18 State Prison SHU and has not been housed with any other inmates since June 11, 2003.

19       B.  Plaintiff's Claims

20       1.  Due Process

21       Plaintiff's chief claim in this action is that defendant Bishop violated his

22 constitutional rights by intentionally providing false information concerning plaintiff's gang

23 affiliation.  On the basis of defendant Bishop's chrono, plaintiff was placed in administrative

24 segregation and ultimately transferred to administrative segregation in Corcoran.  Defendants

25 contend that plaintiff has failed to state a constitutional claim because he failed to demonstrate he

26 was actually validated as a gang associate or member, has failed to allege he suffered any

6

1   repercussions as a result of the alleged gang validation, and has alleged no facts suggesting he

2   was deprived of any liberty interest, and has alleged no facts indicating what procedural due

3   process protections he was denied.

4            As a general rule, a prison inmate has a liberty interest protected by the due

5   process clause only in freedom from acts by prison officials that impose an "atypical and

6   significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Connor,

7   515 U.S. 472, 484 (1995).  The United States Court of Appeals for the Ninth Circuit has held that

8   inmates have no protected liberty interest in placement in administrative segregation because

9   such placement "falls within the terms of confinement ordinarily contemplated by a sentence."

10  May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (citing Toussaint v. McCarthy, 801 F.2d

11  1080, 1091-92 (9th Cir. 1986)).  Similarly, plaintiff has no constitutional right to be housed at a

12  particular prison.  See Meachum v. Fano, 427 U.S. 215, 224-25 (1976).  For these reasons,

13  defendants are entitled to summary judgment on plaintiff's due process claim to the extent that it

14  is based on the actions taken by prison officials based on defendant Bishop's allegations.[2]

15           A prisoner has no constitutionally guaranteed immunity from being falsely or

16  wrongly accused of conduct which may result in the deprivation of a protected liberty interest.

17  See Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir.1986), cert. denied, 485 U.S. 982 (1988).  As

18  long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a

19  fabricated charge fail to state a claim under § 1983.  See id. at 951-53; Hanrahan v. Lane, 747

20  F.2d 1137, 1140-41 (7th Cir.1984).  Plaintiff has not demonstrated he was not afforded

21  procedural due process; his complaint and exhibits show he was able to file grievances and

22  attend hearings during which he participated and rebutted the contention he was gang associated.

23

24           [2] Although the CDC's regulations may require that three pieces of evidence support a gang validation decision, due process requires only that there be "some evidence" in the record to support the findings of a prison board's decision to place an inmate in segregation for

25  administrative reasons such as gang affiliation.  See Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir.1986), cert. denied, 481 U.S. 1069

26  (1987).

1   In fact, he was able to obtain redactions to some of the documents contained in his central file.

2          While plaintiff continues to press claims of wrongful gang validation, he has

3   presented no evidence that he was actually validated as a gang member.  Moreover, it appears

4   that his claims were resolved via the administrative appeals process.  As noted above, plaintiff's

5   central file was redacted to remove any reference to a CRIPs gang association.  (Complaint, Ex.

6   1.)  Plaintiff was not actually validated as a gang member and his alleged potential link to the

7   CRIPs gang was removed from his file, at least to the extent relevant herein.[3]  Plaintiff has

8   provided no evidence that he sustained any injury prior to the redaction of this information from

9   his central file.  Although he contends he was in danger while he was housed with inmate

10  Alexander, a documented "Blood" prison gang member (Complaint at 13-14), he does not

11  explain how he would be in danger if he were not a member of a gang, which he continues to

12  protest he is not.  In addition, plaintiff admits he has been celled alone since June 11, 2003.

13  (Opp'n at 12.)  Plaintiff has provided evidence that the initial chrono defendant Bishop issued

14  has been redacted.

15         Because plaintiff has not presented any evidence that prison officials have

16  wrongfully validated him as a gang member, defendants are entitled to summary judgment as a

17  matter of law.

18                  2. Cruel and Unusual Punishment

19         The unnecessary and wanton infliction of pain constitutes cruel and unusual

20  punishment forbidden by the Eighth Amendment.  See Whitley v. Albers, 475 U.S. 312, 319

21

22         [3]  Plaintiff now claims that on January 11, 2005, Correctional Officer Vanzandt authored
    a CDC 128-B chrono noting plaintiff's CDC 114-A1 indicates plaintiff is an Affiliated East
23  Coast Crip member.  (Pl.'s Ex. 15.)  However, Officer Vanzandt is an officer at Corcoran State
    Prison and is not a named defendant herein.  Plaintiff has not sought leave to amend his
24  complaint to name Officer Vanzandt as a defendant herein.  Such leave would not be granted as
    plaintiff is now housed at Corcoran and any civil rights complaint against Corcoran officers
25  would more appropriately be brought in the Fresno Division of this court.  Moreover, gang
    involvement can change over time; thus, any claims plaintiff may have against Officer Vanzandt
26  should be raised in a fresh complaint.

8

1 (1986); see also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97,

2 105-06 (1976).  "[O]bduracy and wantonness, not inadvertence or error in good faith, . . .

3 characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  475 U.S. at

4 319.  In order to prevail on a claim of cruel and unusual punishment, plaintiff must show that,

5 objectively, he suffered a sufficiently serious deprivation and that, subjectively, each defendant

6 had a culpable state of mind in allowing or causing plaintiff's deprivation to occur.  See Wilson

7 v. Seiter, 501 U.S. 294, 298-99 (1991).  In the present case, plaintiff has not alleged facts

8 showing that any defendant subjected him to the unnecessary and wanton infliction of pain or

9 that any defendant acted with the requisite culpable state of mind.  Thus, plaintiff has not stated

10 an Eighth Amendment claim upon which relief can be granted.

11          3.  Equal Protection

12          To state a claim under the Equal Protection Clause, a plaintiff must allege

13 membership in a suspect class, deprivation of a fundamental personal right, or enforcement of

14 state laws or regulations in an arbitrary or invidiously discriminatory manner.  See McQueary v.

15 Blodgett, 924 F.2d 829, 834-35 & n.6 (9th Cir. 1991); Lockary v. Kayfetz, 917 F.2d 1150, 1155

16 (9th Cir. 1990).  Plaintiff has not done so.  Thus, plaintiff has failed to state an equal protection

17 claim against any of the defendants herein and this claim should also be dismissed.

18          Accordingly, IT IS HEREBY RECOMMENDED that:

19          1.  Defendants' April 26, 2005 motion for summary judgment be granted;

20          2.  Plaintiff's remaining claims be dismissed for failure to state a claim upon

21 which relief can be granted; and

22          3.  This action be dismissed.

23          These findings and recommendations are submitted to the United States District

24 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

25 days after being served with these findings and recommendations, any party may file written

26 objections with the court and serve a copy on all parties.  Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within ten days after service of the objections.  The parties are advised

3   that failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5   DATED:  November 28, 2005.

6

7                       UNITED STATES MAGISTRATE JUDGE

8

9   001

10  broo0916.msj2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26